DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Marvin Watson, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On October 2, 2007, Akron Police Officers stopped a Dodge Durango for traveling in the wrong direction on a one-way street. As one officer approached the vehicle, its driver, Watson, made several movements towards the vehicle's center console. Concerned for their safety, officers removed Watson from the vehicle, frisked him, and requested permission to search the vehicle. Watson consented to the search, and officers found a .22 caliber Smith Wesson in the vehicle's center console.
 {¶ 3} On October 16, 2007, the grand jury indicted Watson on the following counts: (1) carrying a concealed weapon in violation of R.C. 2923.12(A)(2); and (2) one-way traffic-rotary islands in violation of R.C. 4511.32. The matter proceeded to a jury trial, and the jury found *Page 2 
Watson guilty on both counts. The trial court sentenced Watson to twelve months in prison, but suspended his sentence and placed him on community control. Watson appeals from the jury's verdict and raises a single assignment of error for our review.
 II Assignment of Error "THE CONVICTIONS SHOULD BE REVERSED BECAUSE THEY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BECAUSE THE EVIDENCE SUPPORTING THEM WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THE CONVICTION BEYOND A REASONABLE DOUBT IN VIOLATION OF THE UNITED STATES CONSTITUTION."
 {¶ 4} In his sole assignment of error, Watson argues that his conviction for carrying a concealed weapon is based on insufficient evidence and is against the manifest weight of the evidence. Specifically, he argues that he did not knowingly possess the gun that officers found in the center console of the vehicle that he was driving. We disagree.
 {¶ 5} Initially, we note that although Watson's captioned assignment of error challenges both of his convictions he limits his argument to his conviction for carrying a concealed weapon. An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority. See App. R. 16(A)(7). This Court will not create an argument on the behalf of an appellant. See Cardone v. Cardone (May 6, 1998), 9th Dist. No. 18349, at *8 ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). Accordingly, we limit our discussion to Watson's conviction for carrying a concealed weapon.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether *Page 3 
the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 274. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address Watson's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 7} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's *Page 4 
resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also,Otten, 33 Ohio App.3d at 340.
 {¶ 8} R.C. 2923.12(A)(2) provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, * * * a handgun[.]" "The word `have' in R.C. 2923.12 * * * means the defendant either actually or constructively possessed the firearm."State v. Brooks, 9th Dist. No. 23236, 2007-Ohio-506, at ¶ 23. "[A] person acts knowingly when regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 9} Akron Police Officers Angela Falcone and Timothy Van Nostran both testified that they stopped the vehicle Watson was driving for a traffic violation. Officer Van Nostran, a six year veteran, testified that he remained in the passenger's side of the police cruiser to observe while Officer Falcone, an eight year veteran, approached the vehicle. Officer Van Nostran stated that he observed Watson make several movements with his right arm towards the center console in the vehicle and that these movements caused him to be concerned that Watson might have a weapon. Officer Falcone also stated that she observed Watson make several movements towards the center console as she walked to the driver's side of his vehicle and became concerned for her safety. At that point, the officers removed Watson from the vehicle and performed a pat down. Although Watson did not have a weapon on his person, the officers asked him for his permission to search the vehicle. Watson denied having any illegal items in the vehicle, but consented to a *Page 5 
search. Upon her search of the vehicle, Officer Falcone discovered a handgun in the center console. Officer Van Nostran inspected the gun and discovered that it was loaded.
 {¶ 10} Officer Falcone testified that Watson initially denied keeping a handgun in the Durango's center console. Watson repeatedly claimed that his nephew or brother had borrowed the Durango over the weekend. When Officer Falcone displayed the handgun to Watson, however, he admitted that it was his. Watson then claimed that he had loaned the handgun to his brother for target shooting several weeks back and that his brother never returned the gun.
 {¶ 11} Georgia Watson, Watson's niece, testified that she asked her uncle for a handgun after someone broke into her garage. According to Georgia, Watson initially gave her a Kimber handgun, but that handgun was stolen after someone broke into her home again. Georgia testified that she asked Watson for another handgun and that he gave her a .22 caliber Smith Wesson. She further testified that after a few weeks she simply felt that she no longer needed the gun, so she called Watson to return it. Yet, Watson did not answer his phone and was not home when Georgia went to his house. Georgia claimed that she returned Watson's gun by putting it in the center console of his vehicle. She further claimed that she forgot to tell Watson that she had returned the gun.
 {¶ 12} Watson testified that he initially denied having a gun in the Durango because he did not know that his niece had returned it. He testified that he delivered his .22 caliber Smith Wesson to his niece several weeks earlier in a lock box and told her that he needed the gun back at some point. Watson admitted that the gun in the Durango's center console was not in a lock box. He further admitted that he never told officers that his niece either had the gun or might have returned the gun when they discovered it in his center console. Watson testified that several family members often borrowed the gun, so he forgot which family member had it. *Page 6 
 {¶ 13} Based on our review of the record, we cannot conclude that the jury lost its way in convicting Watson for carrying a concealed weapon. Watson claimed that he lent his .22 caliber Smith Wesson, which he put in a lock box, to his niece. Officers found the gun, without any sign of a lock box, in the center console of his Durango. Moreover, Watson never told officers that he had given his gun to his niece to borrow. He claimed that his brother had borrowed the gun for target shooting and repeatedly said that he had allowed his brother or cousin to borrow the Durango over the weekend. Further, both Officer Falcone and Van Nostran testified that they saw Watson make several movements towards the center console of the Durango as Officer Falcone was approaching his vehicle on the night of the traffic stop. We cannot say that the jury lost its way in choosing to believe that Watson knew the .22 caliber Smith Wesson was concealed in the center console of the Durango and in refusing to believe that Watson's niece had borrowed the gun and returned it, fully loaded, by placing it in the Durango's center console when he was not at home. Accordingly, the evidence does not weigh against his conviction for carrying a concealed weapon.
 {¶ 14} Having disposed of Watson's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra, at *2. Watson's sole assignment of error lacks merit.
 III {¶ 15} Watson's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
 Judgment affirmed. *Page 7 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
SLABY, P. J. CARR, J. CONCUR. *Page 1