**[Cite as *State v. Stultz*, 2021-Ohio-2232.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     20CA011625 |
|     Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID STULTZ | AVON LAKE MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
|     Appellant | CASE No.     TRC19000395 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2021

---

SUTTON, Judge.

**{¶1}** Defendant-Appellant, David Stultz, appeals the decision of the Avon Lake Municipal Court related to his motion to suppress evidence and his subsequent jury conviction. For the reasons outlined below, we affirm the judgment of the trial court.

I.

**Eyewitness 911 Call**

**{¶2}** At approximately 8:24 p.m. on April 15, 2019, a call came into the 911 dispatch center in Avon, Ohio. The caller, H.E., observed a black Cadillac Escalade ("SUV") driving erratically. H.E. testified she decided to call 911 because at one point the SUV swerved off the right-hand side of the road and overcorrected into oncoming traffic. H.E. was a passenger in her friend's vehicle and, while on the 911 call, they continued following the SUV. As H.E. and her friend followed the SUV, H.E. relayed information to the dispatcher about the location of the SUV and its erratic movements. H.E. testified that, as the SUV made a right turn onto Moore Road, the

driver first went over the curb and then overcorrected again into oncoming traffic. The driver was able to get close enough for H.E. to relay the license plate information to the dispatcher. As the SUV left Avon and entered Avon Lake, H.E.'s call was transferred to Avon Lake dispatch.

{¶3} Lieutenant Fran Tibbetts of the Avon Lake Police Department was at the Avon Lake dispatch center when H.E.'s call came in. Lt. Tibbetts testified he stayed just long enough to learn that an erratic driver was heading into Avon Lake's jurisdiction and then he immediately headed to his vehicle to attempt to intercept the SUV. As Lt. Tibbetts traveled in the direction of the SUV, dispatch continued relaying real-time information over the radio about the SUV's location and erratic movements. Dispatch also relayed the license plate number of the SUV and the address where the vehicle was registered. As Lt. Tibbetts continued to head in the direction of the SUV, dispatch informed him the SUV had turned onto Westbrook Circle, the street corresponding to the vehicle's registration.

**The Arrest**

{¶4} Lt. Tibbetts arrived on Westbrook Circle shortly thereafter. As he proceeded down the street, he passed a car with two women in the front seats. The women were pointing to a black SUV parked in the driveway at a home at the top of a cul-de-sac. Lt. Tibbetts inferred the vehicle occupants were the 911 callers. The vehicle the women were pointing at matched the description of the SUV that Lt. Tibbetts was trying to locate. Further, the SUV was parked at the address that the dispatcher relayed to him. As Lt. Tibbetts parked and approached the SUV, Officer Tim Schleicher, also of the Avon Lake Police Department, joined him.

{¶5} As Lt. Tibbetts and Officer Schleicher exited their vehicles, the SUV was running in the driveway. Loud music was emanating from the vehicle and the driver's side door was open. The officers found Mr. Stultz seated in the driver's seat. Upon making contact, Lt. Tibbetts

described Mr. Stultz as appearing to be "extremely" intoxicated and testified that Mr. Stultz was "mumbling incoherently." Both officers testified that his eyes were bloodshot and glassy and an odor of alcohol was coming from the vehicle and Mr. Stultz's person. Lt. Tibbetts asked Mr. Stultz to step out of the vehicle and both officers indicated Mr. Stultz had trouble exiting his vehicle safely. As both officers helped him exit the vehicle, Mr. Stultz knocked his lit cigarette into Officer Schleicher's arm. Mr. Stultz was agitated and combative with the officers. Because of his condition, the officers determined that field sobriety tests could not be safely performed.

{¶6} Both officers testified that Mr. Stultz kept mumbling about his dog being in the house. Officer Schleicher testified that when asked if anyone was in the house, Mr. Stultz responded that just his dog was in the house. Officer Schleicher then entered the open garage and knocked "many times" on the garage door of the home. No one appeared at the door in response to Officer Schleicher's knocking. Officer Schleicher also testified that he did not hear a dog barking. Before leaving the scene, Officer Schleicher testified he went around to the back of the house to make sure a dog was not tied up in the yard and did not find the dog, or anyone, in the backyard.

{¶7} Lt. Tibbetts then placed Mr. Stultz under arrest and Officer Schleicher transported him back to the station for booking. Mr. Stultz then refused a breathalyzer test at the police station. Mr. Stultz was charged with one count of violating R.C. 4511.19(A)(1)(a), operating a motor vehicle while under the influence of alcohol or drugs.

**<u>Suppression and the Trial</u>**

{¶8} Mr. Stultz entered a plea of not guilty to operating a motor vehicle while under the influence of alcohol or drugs. Mr. Stultz then filed a motion to suppress on the grounds that the

officers lacked probable cause to arrest him. The trial court denied his motion, finding the officers had probable cause to arrest Mr. Stultz.

{¶9}   The case proceeded to trial. Both officers and H.E. testified at trial. Mr. Stultz also testified at trial in his own defense and admitted to consuming about eight drinks over a period of about three hours that evening. He argued that he was not driving that night, and presented a witness, A.C., whom he alleged was driving his SUV that evening. A.C., a 17-year-old friend and part-time employee of Mr. Stultz, testified he was driving Mr. Stultz's SUV on the night in question. A.C. testified he let Mr. Stultz out of the SUV before backing into the driveway and then A.C. exited the SUV and went into the house. This testimony directly contradicted the testimony of H.E., who testified that she followed the SUV until it pulled into the driveway and continued watching the SUV until the police officers arrived. H.E. stated she could see the driver's side door of the vehicle and that no one exited the vehicle before the officers arrived. H.E. also testified at trial that after the officers arrived at the scene, she received a phone call from the police department asking her to come down and make a written statement. She went to the police station and gave a written statement.

{¶10}  A jury convicted Mr. Stultz of the sole count of operating a motor vehicle while under the influence of alcohol or drugs. Mr. Stultz now appeals.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED [MR. STULTZ'S] MOTION TO SUPPRESS THE UNLAWFUL ARREST BY THE POLICE, AND THE EVIDENCE GATHERED FOLLOWING HIS UNLAWFUL ARREST BY POLICE, IN VIOLATION OF [MR. STULTZ'S] RIGHTS UNDER THE FOURTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10, 14, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶11} In his first assignment of error, Mr. Stultz argues the trial court erred by denying his motion to suppress because the record did not reflect the officers had probable cause to arrest him. Specifically, he asserts that because the responding officers did not have a description of the driver or information on the number of passengers in the SUV, the officers did not have probable cause to arrest him. For the reasons below, we disagree.

**Motion to Suppress**

{¶12} A motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court gives deference to and "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶13} The standard for determining if there was probable cause to justify an arrest for OVI is whether, at the time of arrest, the officer had sufficient facts derived from a reasonably trustworthy source to cause a prudent person to believe the suspect was driving under the influence. *State v. Hopp*, 9th Dist. Summit No. 28095, 2016-Ohio-8027, ¶ 8. This Court has previously stated that "there is no prerequisite that an officer observes erratic driving in order to effectuate an arrest for driving under the influence." *State v. Kurjian*, 9th Dist. Medina No. 06CA0010-M, 2006-Ohio-6669, ¶ 17, citing *State v. Rouse*, 7th Dist. Belmont No. 04 BE 53, 2005-Ohio-6328, ¶ 35.

**Findings Supported by Competent, Credible Evidence**

{¶14} A review of the record reveals the trial court's findings are based upon competent, credible evidence. In its judgment entry, the trial court made several findings related to the incident. The trial court found that the call came into dispatch from H.E., who observed Mr. Stultz driving erratically and relayed in real time to dispatch a detailed description of the SUV and its erratic movements. Dispatch relayed these observations to the responding officers. The trial court noted that H.E. followed the vehicle all the way until it reached its destination and later returned to the Avon Lake Police Department to make a written statement. The trial court also noted, and the officers testified, that upon arriving at the scene they found Mr. Stultz in the driver's seat of a running vehicle. Mr. Stultz was "mumbling incoherently" and appeared to be extremely intoxicated. The trial court noted that Mr. Stultz appeared to be agitated and combative with the officers, and that given Mr. Stultz's appearance of being highly intoxicated, the officers did not believe they could safely perform the field sobriety tests. After a review of the suppression hearing transcript, we can conclude that the trial court's findings of fact are supported by competent, credible evidence.

**Probable Cause for Arrest**

{¶15} In making a probable cause determination, we examine the totality of facts and circumstances surrounding the arrest. As previously stated, evidence was presented at the suppression hearing that the police officers had a report of erratic driving by a 911 caller. When a 911 caller immediately calls 911 and is able to give a precise description of a vehicle and its location, this lends credibility to the caller's account and provides sufficient reliability for the officers. *State v. Dellagnese*, 9th Dist. Summit No. 27492, 2015-Ohio-4349, ¶ 9-10. Upon arriving at the scene, the officers observed Mr. Stultz in a running vehicle, "mumbling incoherently" with

bloodshot and glassy eyes. Both officers described an odor of alcohol coming from Mr. Stultz. An officer has probable cause to arrest where the officer received a radio broadcast of erratic driving and arrived at the scene to observe a suspect who appeared under the influence. *See City of North Ridgeville v. Hummel*, 9th Dist. Lorain No. 04CA008513, 2005-Ohio-595, ¶ 20. *See also*, *Akron v. Smith*, 9th Dist. Summit No. 21519, 2003-Ohio-5773, ¶ 19 (evidence of erratic driving, bloodshot eyes, an odor of alcohol, and an admission of drinking was sufficient to establish probable cause).

{¶16} Based on these facts, we find that Mr. Stultz's arrest was based on sufficient information derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that Mr. Stultz had been driving under the influence.

{¶17} Accordingly, the trial court did not err in denying Mr. Stultz's motion to suppress and Mr. Stultz's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT PREJUDICED [MR. STULTZ] BY ADMITTING INTO EVIDENCE CRUISER VIDEO OVER THE [DEFENSE'S] OBJECTION AND OFFER TO STIPULATE.

{¶18} In his second assignment of error, Mr. Stultz argues the trial court erred by admitting a video taken from inside of Officer Schleicher's cruiser as he transported Mr. Stultz to police headquarters for booking. Mr. Stultz asserts that the video was more prejudicial than probative and should not have been admitted because Mr. Stultz was willing to stipulate to being intoxicated that night. For the following reasons, this assignment of error is overruled.

{¶19} The record shows there were two videos related to this case. The first video was from Officer Schleicher's cruiser. The second video was footage of Mr. Stultz in the booking room at the Avon Lake Police Department. Neither of the videos were played at the suppression

hearing, but from the trial transcript it appears the State submitted the videos to the trial judge as part of the trial court record. According to the trial transcript, it appears the first video of Mr. Stultz in the police cruiser was played for the jury, but the State declined to play the second video of Mr. Stultz in the booking room. However, neither of the videos were transmitted to this Court as part of the record on appeal.

{¶20} Mr. Stultz argues the trial court erred by allowing the State to play the video of Mr. Stultz in the cruiser despite his objection and offer to stipulate to intoxication. However, a review of the record does not show an offer to stipulate by Mr. Stultz.

{¶21} Mr. Stultz did object to the admission of the videos on the grounds that their prejudicial effect outweighed their probative value. Although Mr. Stultz challenges the admission of the cruiser video, he has not provided the cruiser video as part of the record. It is the appellant's burden to supply a complete record on appeal. *See State v. Filip*, 9th Dist. Medina No. 16CA0049-M, 2017-Ohio-5622, ¶ 16; *State v. Daniel*, 9th Dist. Summit No. 27390, 2014-Ohio-5112, ¶ 5. This Court provided additional time for the parties, including Mr. Stultz, to supplement the record with the cruiser video prior to issuing this decision, but the video was never produced. Because Mr. Stultz did not include the cruiser video in the record before this Court, we are required to presume regularity in the proceedings and overrule the assignment of error relating to the trial court's admission of the cruiser video on that basis. *See Filip* at ¶ 16; *State v. Mencini*, 9th Dist. Summit No. 27322, 2015-Ohio-89, ¶ 21; *State v. Cooper*, 9th Dist. Medina No. 12CA0067-M, 2013-Ohio-5489, ¶ 12.

{¶22} Additionally, Mr. Stultz briefly alleges prosecutorial misconduct during the cross-examination of Mr. Stultz. However, Mr. Stultz cites no legal authority in support of his argument and cites no specific examples of prosecutorial misconduct in the record. It is Mr. Stultz's burden

on appeal to demonstrate prejudice. As this Court has stated "[a]n appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *State v. Watson*, 9th Dist. Summit No. 24232, 2009-Ohio-330, ¶ 5, citing App.R. 16(A)(7).

{¶23} Accordingly, Mr. Stultz's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

A CONVICTION FOR OPERATING A VEHICLE UNDER THE INFLUENCE IN VIOLATION OF O.R.C. 4511.19(A)(1)(d) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} In his third assignment of error, Mr. Stultz argues his conviction for operating a vehicle while under the influence was against the manifest weight of the evidence. For the following reasons, this assignment of error is overruled.

{¶25} As stated above, it is the appellant's burden to supply a complete record on appeal. *Filip* at ¶ 16; *Daniel* at ¶ 5. We previously held that in order for this Court to consider an assignment of error related to manifest weight, the record must include all evidence relevant to the findings or conclusions of the trial court:

> Pursuant to App.R. 9(B), an appellant who wishes to assert a finding or conclusion is unsupported by the evidence or against the manifest weight of the evidence shall include in the record "a transcript of all evidence relevant to the findings or conclusion."

*Cook v. Bell*, 9th Dist. Summit No. 25092, 2010-Ohio-3579, ¶ 9. Under App.R. 9(B)(6)(g), the transcript is to have any admitted exhibits attached to it.

{¶26} In this case, the record contains a transcript of the trial proceedings and the photographs and other documents presented at trial. However, although the transcript indicates the video exhibit that is the subject of the second assignment of error was admitted into evidence, it was not included in the record for this Court's review. And as stated above, this Court provided

additional time for the parties, including Mr. Stultz, to supplement the record with the cruiser video prior to issuing this decision. No video was ever provided, and the parties gave no notice to this Court that they were unable to provide the video.

{¶27} When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has no choice but to presume the validity of the lower court's proceedings and affirm. *Cook* at ¶ 9, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). Thus, in the absence of a complete record, this Court must presume regularity in the trial court's proceedings and accept its judgment. *Id.*, citing *Wozniak v. Wozniak*, 90 Ohio App.3d, 400, 409 (9th Dist.1993).

{¶28} Because the record does not contain all of the evidence relevant to Mr. Stultz's third assignment of error, this Court cannot conclude the trial court's judgment was against the manifest weight of the evidence or that the trial court erred by rendering judgment against Mr. Stultz.

{¶29} Accordingly, Mr. Stultz's third assignment of error is overruled.

III.

{¶30} For the reasons indicated above, Mr. Stultz's assignments of error are overruled. The judgment of the Avon Lake Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Avon Lake Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

BETTY SUTTON
FOR THE COURT

 

 

HENSAL, P. J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶31} Although I agree that Mr. Stultz's conviction should be affirmed, I would analyze some of the issues differently.

{¶32} In the second assignment of error, the State argues that *Old Chief v. United States*, 519 U.S. 172 (1997) is not controlling because it only applies to stipulations regarding prior convictions. This Court does not have to reach the scope of *Old Chief's* application though because no offer to stipulate is in the record.

{¶33} As to the third assignment of error, I agree that the absence of a videotape that was admitted into evidence usually prevents review of the manifest weight of the evidence. However, this case is an exception because whether Mr. Stultz was driving was the sole issue at trial. Mr. Stultz does not contest that he was intoxicated but he does contest that he was

driving. Consequently, the videotape here of his transport to the police station would not prevent review of the evidence regarding whether Mr. Stultz was driving.

{¶34} Within his third assignment of error, Mr. Stultz appears to assert that the conviction was based upon insufficient evidence and was against the weight of the evidence. When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trier of fact was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991). Whereas,

> [i]n determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶35} I would address both arguments. Officers testified that they found Mr. Stultz in his driveway in the driver's seat of his running car. This, coupled with the testimony of the 911 caller regarding the erratic driving, is sufficient evidence, if believed, whereby a trier of fact could conclude beyond a reasonable doubt that Mr. Stultz was driving the vehicle. Further, based on his argument, Mr. Stultz has not demonstrated that his conviction was against the weight of the evidence.

APPEARANCES:

JASON S. HARLESS, Attorney at law, for Appellant.

JOHN L. REULBACH, JR., Prosecuting Attorney, for Appellee.