[Cite as *State v. Sims*, 2025-Ohio-5827.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                        Court of Appeals No. WD-24-075

      Appellee                                   Trial Court No.  2023 CR 0306

v.

Jeremy M. Sims                                 **DECISION AND JUDGMENT**

      Appellant                                  Decided: December 30, 2025

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, Jeremy Sims, from the October 21, 2024

judgment of the Wood County Court of Common Pleas.  For the reasons that follow, we

affirm the trial court's judgment.

{¶ 2} Sims sets forth one assignment of error:

{¶ 3} Appellant's convictions are against the manifest weight of the

evidence.

## Background

{¶ 4} On June 22, 2023, Sims, who was 43 years old, was indicted on seven offenses, all involving A.K., who was 12 years old: Counts 1 and 2, rape, each count a first-degree felony and each count included a repeat violent offender ("RVO") specification ("spec") and sexually violent predator ("SVP") spec; Count 3, kidnapping, a first-degree felony, with a school safety zone spec, sexual motivation spec, RVO spec and SVP spec; Count 4, importuning, a second-degree felony based upon the age of the victim, who was 12 years old, and Sims' previous conviction of a sexually-oriented offense involving a child victim; Count 5, pandering obscenity involving a minor, a second-degree felony; Count 6, compelling prostitution, a third-degree felony based upon the age of the victim; and Count 7, gross sexual imposition ("GSI"), a third-degree felony based upon the age of the victim. Sims pled not guilty.

{¶ 5} A jury trial was held on August 19 and 20, 2024, on the seven counts charged in the indictment as well as the school safety zone and sexual motivation specs. Sims waived a jury trial as to the RVO and SVP specs. The jury found Sims guilty of all charges and found Sims committed kidnapping in a school safety zone and with a sexual motivation.

{¶ 6} The RVO and SVP specs were then tried to the bench. The State presented evidence of Sims' previous convictions - a 2003 robbery conviction and a 2003 pandering obscenity conviction. The trial court found, by clear and convincing evidence, that Sims was a RVO due to his 2003 robbery conviction, and as to the SVP specs, that Sims was

2.

likely to engage in one or more sexually oriented offenses in the future, as the court indicated that "[t]he available information, evidence, suggests that Mr. Sims does chronically commit offenses with a sexual motivation."

{¶ 7} The trial court sentenced Sims to a total indefinite sentence of 30 years to life. Sims timely appealed, assigning as error that his convictions are against the manifest weight of the evidence.

**Trial Testimony and Evidence**

**A.K.**

{¶ 8} A.K. testified that he was 12 years old and identifies sexually as gay. He met Sims on Grindr, a gay dating app, where A.K. was looking to find money. A.K. acknowledged Grindr was for people 18 years and older, and he was not supposed to be on Grindr. On A.K.'s Grindr profile, it said he was 18 but A.K. told Sims he was 17 and small for his age due to a growth condition. A.K. and Sims discussed that A.K. would perform sexual acts for money.

{¶ 9} A.K. and Sims also communicated by iMessage and Sims sent a naked picture of himself, with his penis clearly exposed, to A.K. The two agreed to meet "to exchange sexual acts for money." A.K. remembered it was May 26, 2023, because that was his last day of sixth grade.[1] A.K. waited for his mother to go to bed that night then he snuck out of his apartment and met Sims at the high school parking lot. A.K. got into

---

[1] The record shows May 25, 2023 was the last day of school, and that evening, into the early morning of May 26, 2023, is when A.K. and Sims were messaging each other.

3.

Sims' van and they drove to a nearby hotel parking lot. Before A.K. did anything sexually, he told Sims he was 12 years old, but this did not stop Sims.

{¶ 10} A.K. performed oral sex on Sims, but not to completion, while Sims put his tongue on A.K.'s anus and Sims put his fingers in A.K.'s anus. Sims received a phone call, so the sexual interaction stopped. A.K. said Sims gave him $30 cash, which was not the full amount on which the two had agreed. Sims asked if he could come back and pay the rest of the money later and finish what they started. Sims drove A.K. back to the high school, dropped A.K. off and drove away. A.K. walked home and took a shower because he felt nasty. Thereafter, A.K. and Sims resumed texting about meeting back up. Ultimately, the two did not meet again because A.K. did not feel comfortable.

{¶ 11} The next day, A.K. left Ohio to go to his grandparents' house in Maryland for the summer. A.K. and Sims continued to have contact and A.K. sent pictures and a video to Sims. One picture was A.K. in a shirt and underwear with his penis partially exposed, but Sims was not satisfied with that picture so A.K. sent a picture of his "butt fully exposed." Sims was again not satisfied with the picture so A.K. made and sent a video of him slapping his butt to Sims, per Sims' request.

{¶ 12} At trial, A.K. was shown and identified exhibit 2, which contained some Grindr messages, exhibits 3 and 4, which contained iMessages, and exhibit 5 which consisted of photos of A.K. partially naked and fully naked, and a video of A.K.'s "butt." By stipulation of the parties, exhibit 1 was admitted, which were the cell phone extractions of A.K.'s phone and Sims' phones.

4.

**K.K.**

{¶ 13} K.K., A.K.'s mother, testified that she had no idea that A.K. left the house on May 26, 2023. Later that morning, she drove A.K. to Pennsylvania to meet his grandparents halfway. A.K. went with his grandparents and K.K. returned to Ohio.

{¶ 14} The following weekend, K.K. drove to the grandparents' house in Maryland, and planned to leave their house for a trip with friends on June 5, 2023. However, late on June 4, 2023, police arrived at the grandparents' home and made K.K. aware that something occurred with A.K. The police had been notified by the parents of A.K.'s friend after A.K. told the friend what happened with Sims and the friend told the parents. The police requested and were given A.K.'s cell phone. After the police completed their questioning, the phone was returned to K.K., and she hid it "to protect the integrity of the phone" and also to "prevent whatever happened with that phone from reoccurring."

{¶ 15} The Maryland police directed K.K. to contact the Perrysburg Police Division ("PPD") for further investigation of the matter because PPD had jurisdiction. K.K.'s mother then drove A.K.'s phone from Maryland to PPD so PPD could have the phone as soon as possible. K.K. cancelled her trip and stayed in Maryland with A.K.

**Brent Shafer**

{¶ 16} Mr. Shafer testified he was the director of technology for the high school where A.K. met Sims. Shafer testified about the surveillance footage taken by cameras at the high school on May 26, 2023.

5.

{¶ 17} Shafer was shown and identified exhibit 6, which consisted of four video clips of the surveillance footage from the high school, and exhibit 7, which was an overhead view of the high school.

**Detective Sharon Kociancic**

{¶ 18} Detective Kociancic testified she was employed by PPD when she received a report, originally taken by patrol officers, concerning the incident between A.K. and Sims. After speaking with the PPD patrol officer, Detective Kociancic contacted the Maryland police who provided some background regarding the incidents, and screenshots.

{¶ 19} The detective conducted an investigation and learned A.K. was 12 years old and lived in Perrysburg and Sims was 43 years old and lived in Perrysburg Township. Detective Kociancic executed multiple search warrants, including on Sims' two cell phones. The detective used a computer program, Cellebrite, on Sims' phones and A.K.'s phone to access data and readable information from the phones. The Grindr messages between A.K. and Sims were located on one of Sims' phones, but not on A.K.'s phone, as A.K. had presumably deleted the Grindr app from his phone. The detective was also able to digitally verify admissions by both A.K. and Sims, that they had been at the hotel parking lot, as A.K. had his location information turned on for one of the apps on his phone which showed he was in the hotel parking lot from 12:58 a.m. to 1:31 a.m. on May 26, 2023.

6.

{¶ 20} Detective Kociancic interviewed Sims, which was recorded. At trial, the detective was shown and identified exhibit 10, a redacted version of Sims' recorded interview, which was played for the jury. In his interview, Sims first said he did not remember meeting anyone named A.K. on Grindr, but later, said he remembered A.K. but denied knowing A.K.'s age. Sims did not deny picking A.K. up at the high school or driving with A.K. or negotiating prices for sex acts with A.K. The detective acknowledged the only evidence that money was exchanged was A.K.'s testimony that Sims gave him $30 in the van. The detective also noted that videos on A.K.'s phone matched videos she found on Sims' phone after Sims' interview.

{¶ 21} Detective Kociancic was shown and identified exhibit 9, a redacted version of a jail phone call from Sims to his roommate, which was played for the jury. The call took place the day after Sims' interview. In the call, Sims asked his roommate to call T-Mobile and report that Sims' phones were stolen and have Sims' phones shut down. The detective said it appeared that Sims was trying to destroy evidence, although this would not and did not prevent her from accessing the information in Sims' phones. The roommate did call T-Mobile and had Sims' phones shut down, which the detective learned the next day from another jail phone call between Sims and his roommate. In addition, the detective served a search warrant on T-Mobile and received a recorded phone call by the roommate to a T-Mobile employee where the roommate said he was Sims and requested Sims' phones be shut down. The roommate was then charged with obstructing justice.

7.

{¶ 22} On cross-examination, Detective Kociancic acknowledged that in her interview with Sims, he initially denied sexual conduct or contact with A.K., but later said he could not remember. Sims never admitted to any sex acts with A.K.

**iMessage and Grindr Messages**

{¶ 23} The iMessages and Grindr messages admitted into evidence at trial documented a detailed sexual encounter and exchange between A.K. and Sims.

## Assignment of Error

**Sims' Arguments**

{¶ 24} Sims argues his convictions are against the manifest weight of the evidence. He contends the rape convictions are only substantiated by A.K.'s testimony, so this court should review A.K.'s testimony carefully and determine whether A.K.'s credibility is sufficient to convict Sims of the rape counts. Sims asserts the GSI conviction is based on A.K.'s testimony and one text message that Sims allegedly sent A.K. Sims argues that the remaining convictions are based entirely on text messages and videos, which the detective secured from cell phone downloads. Sims contends no evidence was found on "either cell phone" that he ever actually sent A.K. money via CashApp or any other app, and the detective admitted that no evidence exists of any payment from Sims to A.K. for pictures or videos. Sims asserts the only evidence of a payment was the $30 cash that A.K. testified he received while in Sims' car immediately after the sex acts. Sims suggests that this court review the entire record carefully.

8.

**State's Arguments**

{¶ 25} The State argues that circumstantial evidence and direct evidence inherently possess the same probative value and should be given the same standard of proof, as found by the Supreme Court of Ohio in *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. The *Jenks* court further held that "[w]hen the [S]tate relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required." The State cites to *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988), where the Supreme Court held it is "well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence."

{¶ 26} The State contends that Sims' arguments concern the issue of believability, and Sims would have preferred that the jury not believe A.K.'s testimony. The State submits this court has held that when the State relies on a *single* witness at trial and a manifest weight of the evidence argument is raised on appeal "'[m]erely because the prosecution relied, essentially, on only one witness to prove its case, does not mean that a guilty verdict must necessarily be against the manifest weight of the evidence.'" *Toledo v. Digby*, 1983 WL 6977, *4 (6th Dist. Oct. 28, 1983). Yet, *four* witnesses testified at Sims' trial. Moreover, the State asserts the weight to be given the evidence presented and

9.

the credibility of the witnesses at the trial are primarily for the trier of fact to determine, citing *State v. Thomas*, 70 Ohio St.2d 79 (1982), syllabus.

## Standard of Review

{¶ 27} "When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Haas*, 2025-Ohio-683, ¶ 39 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). We are not required to view the evidence in a light most favorable to the State. Rather, "we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 2012-Ohio-6068, ¶ 15 (6th Dist.), citing *Thompkins* at 388. We reverse on manifest weight grounds only in the exceptional case where the evidence weighs heavily against conviction. *Thompkins* at 387.

## Analysis

**Rape**

{¶ 28} As to Counts 1 and 2, Sims was convicted of rape, fellatio and digital penetration, respectively, in violation of R.C. 2907.02(A)(1)(b), which states "[n]o person shall engage in sexual conduct with another when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

10.

{¶ 29} Sims' challenge to the manifest weight of the evidence regarding his rape convictions does not refer to or attack any specific testimony given by A.K. Rather, Sims requests that we undertake a review of A.K.'s testimony and determine whether A.K.'s credibility is sufficient to convict Sims of the rape counts.

{¶ 30} While a reviewing court, when ruling on the issue of manifest weight of the evidence, is tasked with weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and determining whether the jury clearly lost its way in resolving evidentiary conflicts, it is the responsibility of the appellant to set forth in the appellate brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions . . ." App.R. 16(A)(7).

{¶ 31} Despite Sims' failure to fully comply with App.R. 16(A)(7), we will consider whether Sims' rape convictions, as well as his kidnapping, importuning, pandering and GSI convictions are against the manifest weight of the evidence.

{¶ 32} A review of the record reveals A.K. testified at trial that he was 12 years old when he met up with Sims and he, A.K., performed oral sex on Sims while Sims put his tongue on A.K.'s anus and Sims put his fingers in A.K.'s anus. Also, messages between A.K. and Sims mention contact, including Sims asking A.K., "Did me licking you ass feel good," Sims telling A.K., "So you basically saying you don't want me to come back" and A.K. saying to Sims, "So u come back, give the cash and preferable drive me to my location then we can redo this when I come back."

11.

{¶ 33} We note that the jury was free to believe, or disbelieve, any part of A.K.'s testimony, as the jury was able to see, hear and evaluate A.K. at trial. In addition, the jury was able to give the messages exchanged between Sims and A.K. whatever weight the jury saw fit. We find no indication in the record that the jury clearly lost its way or that any miscarriage of justice resulted. We therefore conclude that Sims' rape convictions are not against the manifest weight of the evidence.

**RVO and SVP Specs Attached to Rape Counts**

{¶ 34} Sims was also convicted of being an RVO as specified in R.C. 2941.149(A) and defined in R.C. 2929.01(CC), and an SVP as specified in R.C. 2941.148(A) and defined in R.C. 2929.01(JJ) and (YY).

{¶ 35} R.C. 2929.01(CC) states in relevant part:

"[RVO]" means a person about whom both of the following apply:

(1) The person is being sentenced for committing . . . :

(a) . . . any felony of the first or second degree that is an offense of violence. . .;
. . .

(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) . . .

{¶ 36} R.C. 2929.01(JJ) states in relevant part that an "'[SVP spec]' ha[s] the same meaning[] as in section 2971.01 of the Revised Code." R.C. 2971.01(I) provides an SVP spec . . . means a [spec], as described in section 2941.148 of the Revised Code, that charges that a person charged with a violent sex offense, or a person charged with a . . . kidnapping offense and a sexual motivation [spec], is a[n SVP]."

12.

**{¶ 37}** R.C. 2929.01(YY) states in relevant part:

A person is "adjudicated a[n SVP]" if the person is convicted of or pleads guilty to a violent sex offense and also is convicted of or pleads guilty to a[n SVP spec] that was included in the indictment, count in the indictment . . . charging that violent sex offense or if the person is convicted of or pleads guilty to a designated homicide, assault, or kidnapping offense and also is convicted of or pleads guilty to both a sexual motivation [spec] and a[n SVP spec] that were included in the indictment, count in the indictment . . . charging that designated homicide, assault, or kidnapping offense.

**{¶ 38}** Upon review, Sims did not set forth *any* arguments specific to the RVO and SVP specs being against the manifest weight of the evidence. An appellant must affirmatively demonstrate error on appeal. *State v. Ide*, 2024-Ohio-5527, ¶ 14 (6th Dist.). Thus, "[a]n appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority. See App.R. 16(A)(7)." *State v. Watson*, 2009-Ohio-330, ¶ 5 (9th Dist.).

**{¶ 39}** "Where an appellant fails to develop an argument in support of an assignment of error, this court will not create one . . ." *State v. Fenderson*, 2022-Ohio-1973, ¶ 70 (6th Dist.), citing *State v. Franks*, 2017-Ohio-7045, ¶ 16 (9th Dist.), quoting *Cardone v. Cardone*, 1998 WL 224934, * 8 (9th Dist. May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out. We disregard this inadequately argued assignment of error.").

**{¶ 40}** Here, since Sims did not set forth *any* arguments as to the RVO spec and SVP spec findings being against the manifest weight of the evidence, he failed to carry his burden of demonstrating error on appeal as to these specs.

13.

**Kidnapping**

{¶ 41} As to Count 3, Sims was convicted of kidnapping, in violation of R.C. 2905.01(A)(2), which states "[n]o person, . . . in the case of a victim under the age of thirteen . . ., by any means, shall remove another from the place where the other person is found . . . [t]o facilitate the commission of any felony . . ."

{¶ 42} Sims argues, generally, that his conviction is based entirely on text messages and videos, which the detective secured from cell phone downloads.

{¶ 43} Upon review, A.K. testified at trial that he was 12 years old when he met Sims at the high school parking lot, got into Sims' van and they drove to a nearby hotel parking lot where the two had sexual contact. In addition, messages between A.K. and Sims discuss Sims driving to pick up A.K.

{¶ 44} We observe that since the jury was able to see, hear and evaluate A.K. and his credibility at trial, the jury could choose to believe or not believe all or any part of A.K.'s testimony. Also, the jury could give the messages exchanged between Sims and A.K. the weight the jury saw fit. We find nothing in the record to indicate that the jury clearly lost its way or that any miscarriage of justice resulted. Thus, we conclude this is not the exceptional case where the evidence weighs heavily against Sims' kidnapping conviction.

**Sexual Motivation, School Safety Zone, RVO and SVP Specs Attached to Kidnapping Count**

{¶ 45} Sims was found to have committed kidnapping with a sexual motivation, as specified in R.C. 2929.147(A) and defined in R.C. 2929.01(JJ), and in a school safety

14.

zone, as specified in R.C. 2941.143 and defined in R.C. 2929.01(ZZ), and being an RVO and an SVP.

{¶ 46} R.C. 2929.01(JJ) states in relevant part that "'sexual motivation [spec],'. . . '[and SVP spec]' have the same meanings as in section 2971.01 of the Revised Code." R.C. 2971.01(J) provides "'[s]exual motivation' means a purpose to gratify the sexual needs or desires of the offender." R.C. 2971.01(K) provides "'[s]exual motivation [spec]' means a [spec], as described in section 2941.147 of the Revised Code, that charges that a person charged with a . . . kidnapping offense committed the offense with a sexual motivation."

{¶ 47} R.C. 2929.01(KK) states in relevant part that "[a]n offense is 'committed in proximity to a school' if the offender commits the offense in a school safety zone or within five hundred feet of any school building or the boundaries of any school premises, regardless of whether the offender knows the offense is being committed in a school safety zone or within five hundred feet of any school building or the boundaries of any school premises."

{¶ 48} Here, Sims failed to set forth *any* arguments that the sexual motivation, school safety zone, RVO and SVP findings were against the manifest weight of the evidence. Thus, Sims has not carried his burden of demonstrating error on appeal as to these specs.

15.

**Importuning**

{¶ 49} As to Count 4, Sims was convicted of importuning, in violation of R.C. 2907.07(A) and (G)(2). R.C. 2907.07(A) provides that "[n]o person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person."

{¶ 50} Sims argues, generally, his importuning conviction is based entirely on text messages and videos, which the detective secured from cell phone downloads.

{¶ 51} Upon review, A.K. testified at trial that he was 12 years old when he met Sims on Grindr and the two discussed, on both Grindr and iMessage, that A.K. would perform sex acts for money. We take note that the jury was able to observe A.K. at trial and evaluate his credibility such that the jury could choose to believe or not believe any part of A.K.'s testimony. In addition, the jury was able to assign the weight it saw fit to the Grindr and iMessage communications between A.K. and Sims. We find there is no indication in the record that the jury clearly lost its way or that a miscarriage of justice resulted. We therefore conclude that Sims' importuning conviction is not against the manifest weight of the evidence.

**Pandering Obscenity Involving a Minor**

{¶ 52} As to Count 5, Sims was convicted of pandering, in violation of R.C. 2907.321(A)(3) and (C), which states in relevant part that "[n]o person, with knowledge of the character of the material or performance involved, shall . . . [c]reate, direct, or produce an obscene performance that has a minor . . . as one of its participants . . . "

16.

{¶ 53} Sims set forth a general argument that his pandering conviction is based entirely on text messages and videos, which the detective secured from cell phone downloads.

{¶ 54} Upon review, A.K. testified at trial that he was 12 years old when he met Sims and Sims requested that A.K. make and send a video of A.K. slapping his butt. The video was shown to the jury and was admitted into evidence at trial as exhibit 5. The jury was able to watch A.K. testify at trial and decide whether or not to believe any part of A.K.'s testimony. The jury was also able to watch the video of A.K. and review the iMessage communications between Sims and A.K. and decide the weight to give them.

{¶ 55} We find, based upon the record, that the jury did not lose its way in finding Sims guilty of pandering obscenity involving a minor. This is not a case in which the evidence weighs heavily against the conviction, thus we find Sims' pandering conviction is not against the manifest weight of the evidence.

**Compelling Prostitution**

{¶ 56} As to Count 6, Sims was convicted of compelling prostitution, in violation of R.C. 2907.21(A)(3)(a) and (C). R.C. 2907.21(A)(3)(a) states in relevant part that "[n]o person shall knowingly . . . [p]ay or agree to pay a minor, either directly or through the minor's agent, so that the minor will engage in sexual activity, whether or not the offender knows the age of the minor . . ."

{¶ 57} Sims asserts no evidence was found on "either cell phone" that he ever sent money to A.K. through any app, and the detective admitted that no evidence exists of any

17.

payment from Sims to A.K. for pictures or videos.  Sims argues the only evidence of a payment was the $30 cash that A.K. testified he received while in Sims' car immediately after the sex acts.

{¶ 58} Upon review, A.K. testified at trial that he was 12 years old when he met Sims on Grindr and the two discussed that A.K. would perform sexual acts for money. A.K. and Sims also communicated by iMessage and the two agreed to meet to exchange sex acts for money.  A.K. testified he received $30 from Sims after performing a sex act on Sims.

{¶ 59} We find the jury was able to see and hear A.K. at trial and the jurors could then determine if they believed or did not believe any part of A.K.'s testimony.  The jury was also presented with Grindr and iMessage communications between A.K. and Sims in which they negotiated prices for different sex acts that A.K. would perform on Sims.  We find the jury did not lose its way by accepting A.K.'s testimony as proof that Sims knowingly paid or agreed to pay A.K. to engage in sexual activity, whether or not Sims knew A.K. was 12 years old.  Based on the evidence in the record, we cannot say the jury's finding created a manifest miscarriage of justice such that Sims' conviction for compelling prostitution must be reversed and a new trial ordered.

**GSI**

{¶ 60} As to Count 7, Sims was convicted of GSI in violation of R.C. 2907.05(A)(4) and (C)(2), which states in pertinent part that "[n]o person shall have sexual contact with another; cause another to have sexual contact with the offender . . .

18.

when . . . [t]he other person . . . is less than thirteen years of age, whether or not the offender knows the age of that person." Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, . . . for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 61} Sims argues his GSI conviction is based on A.K.'s testimony and one text message that Sims allegedly sent A.K.

{¶ 62} Upon review, A.K. testified he was 12 years old when he met Sims and A.K recounted that he performed oral sex on Sims while Sims put his tongue on A.K.'s anus and Sims put his fingers in A.K.'s anus. Further, Sims' iMessage communication to A.K. reads "Did me licking you ass feel good[?]" We note that this is not a case where a minor testified about a sexual assault and no other corroborating evidence was presented, as the State presented messages between A.K. and Sims in which Sims acknowledges that he licked A.K.'s ass, which is, in essence, an admission by Sims that he had sexual contact with A.K. We find nothing in the record to indicate that the jury clearly lost its way or that any miscarriage of justice resulted. Thus, we conclude this is not the exceptional case where the evidence weighs heavily against Sims' GSI conviction.

### Conclusion

{¶ 63} In light of our foregoing findings, we conclude Sims' assignment of error is not well-taken.

**{¶ 64}** The judgment of the Wood County Court of Common Pleas is affirmed.

Sims is ordered to pay the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

                               JUDGE

Myron C. Duhart, J.

CONCUR.
                               JUDGE

Gene A. Zmuda, J.

CONCURS AND WRITES SEPARATELY.
                               JUDGE

**ZMUDA, J., concurring.**

**{¶ 65}** Because I agree with the majority in affirming the judgment but would limit consideration to the argument asserted and supported by appellant, I write separately.

**{¶ 66}** Appellant asserts a single assignment of error: "Appellant's convictions are against the manifest weight of the evidence." The supporting argument is contained within a single paragraph, as follows:

> Simply, the rape convictions were substantiated only by the testimony of A.K. This Court can and should review A.K.'s testimony carefully and determine whether A.K.'s credibility is sufficient to convict of the rape counts. The gross sexual imposition conviction is based upon A.K.'s testimony and one text message appellant allegedly sent to A.K. The other convictions are based entirely on text messages and videos which the detective received from cell phone downloads. The detective admitted that no evidence exists of payment from appellant to A.K. for pictures and videos. For these reasons, the Court should review the entire record carefully.

**{¶ 67}** In essence, appellant directs this Court to review the entire record carefully to glean support for a generalized manifest weight challenge, with no direction from appellant regarding where to find pertinent matters or how these matters demonstrate support for his position. However, "[a]n appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *Bias v. Boyd,* 2025-Ohio-5080, ¶ 9 (6th Dist.), citing *State v. Watson,* 2009-Ohio-330, ¶ 5 (9th Dist.), citing App.R. 16(A)(7). Appellant provides no reasoning in support of his contentions and cites no "authorities, statutes, and parts of the record on which appellant relies." *State v. Thomas,* 2019-Ohio-1916, ¶ 49 (6th Dist.), quoting *State v. Ritter,* 2005-Ohio-6526, ¶ 79 (6th Dist.). "With no argument or reasoning, we need not attempt to create an argument out of thin air[.]" *Thomas* at ¶ 49, citing *Ritter* at ¶ 79.

**{¶ 68}** Because the record in this case demonstrates no issues that would place credibility at issue, and appellant fails to identify any specific issues for our review, I

21.

would affirm without addressing potential issues never specifically raised. Therefore, I respectfully concur.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.