[Cite as *Krznaric v. Summa Rehab Hosp., L.L.C.*, 2024-Ohio-4776.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STEPHEN J. KRZNARIC, as the Personal Representative of the Estate of Frances M. Krznarich, (deceased) | | C.A. No. 30318 |
| Appellant | | APPEAL FROM JUDGMENT ENTERED IN THE |
| v. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| SUMMA REHAB HOSPITAL, LLC et al. | | CASE No. CV-2019-09-3536 |
| Appellees | | |

DECISION AND JOURNAL ENTRY

Dated: October 2, 2024

PER CURIAM.

{¶1} Plaintiff-Appellant Stephen J. Krznaric, as the Personal Representative of the Estate of Frances M. Krznarich, appeals the judgment of the Summit County Court of Common Pleas. This Court reverses and remands the matter for proceedings consistent with this decision.

I.

{¶2} Mr. Krznaric is the son of Ms. Krznarich. In September 2018, Ms. Krznarich was admitted to Defendant-Appellee Summa Rehab Hospital, LLC, a short-term, acute rehabilitation hospital. At the time of Ms. Krznarich's admission to Summa Rehab Hospital, LLC she was under the care of Defendant-Appellee Dane Donich, M.D. for acute, chronic subdural hematoma. She was to follow up with Dr. Donich at a separate appointment. Dr. Donich's practice is Defendant-Appellee Donich Neurosurgery and Spine, LLC.

**{¶3}** The staff at Summa Rehab Hospital, LLC observed that Ms. Krznarich was sometimes confused and experienced both hallucinations and agitation. This was aggravated by the fact that she could not speak English fluently. She was designated as a fall risk as she had previously fallen. Due to her extreme fall risk, she was ordered to have 24/7 supervision, which consisted of a bed alarm, video monitoring, and an in person full-time sitter at her bedside to monitor her. Summa Rehab Hospital, LLC employee Tammy Kimmel, a licensed practical nurse, was assigned as Ms. Krznarich's primary sitter.

**{¶4}** Summa Rehab Hospital, LLC's records reflected that Ms. Krznarich was scheduled for a follow-up outpatient appointment with Dr. Donich on September 17, 2018. Kristen Grund, a registered nurse and case manager at Summa Rehab Hospital, LLC, was responsible for assessing and arranging the appropriate transport needs. Ms. Grund, through a secretary, arranged transport by ambulette through American Medical Response ("AMR"), which could accommodate Ms. Krznarich in her wheelchair.

**{¶5}** Ms. Kimmel was responsible for Ms. Krznarich's transfer to the AMR driver. In her deposition, Ms. Kimmel testified that she "went over the stuff: [Ms. Krznarich] was confused. She had the Foley. She was a high fall risk." Ms. Kimmel also handed the driver "the transport form[,]" but was not the person that filled it out. Ms. Grund completed the form. The form that was given to the driver is also described as the ambulette form in the transcript.

**{¶6}** When asked about more hypothetical situations involving patients similar to Ms. Krznarich, Ms. Kimmel stated that she would tell the transport driver that "she's confused; that she will get up; that * * * she had a Foley bag. That's it." Ms. Kimmel was then asked if she would make sure to tell the transport driver that the driver had to stay with Ms. Krznarich, Ms. Kimmel responded, that "[t]hat was on the form." When Ms. Kimmel was asked again if she would tell a

transport driver of a patient who was at a high fall risk to stay with the patient, Ms. Kimmel indicated that she did not say those exact words. Instead, she "told him about the Foley [bag]; that she gets up, that she's a high fall risk. That's, that's pretty much it." Ms. Kimmel was then asked if she would verbally tell the transport driver that the driver had to stay with the patient. Ms. Kimmel responded, "Yes. I mean, go over the …" However, the remainder of her answer was cut off by the next question. Nevertheless, Ms. Kimmel indicated it was her understanding that the driver would stay with Ms. Krznarich and return to Summa Rehab Hospital, LLC.

{¶7} Within this Court's record is a three-page document which is authenticated by an attorney from Summa Rehab Hospital, LLC as being a true and accurate copy of AMR records produced by Mr. Krznaric. There is no indication within the affidavit that that document is the same one utilized in Ms. Kimmel's deposition, which was not marked as an exhibit. In fact, there were no exhibits accompanying Ms. Kimmel's deposition. One of the three pages related to the transport in the record is the AMR Ohio Jobs and Family Services Ambulette Certification of Medical Necessity Form. That form was signed by Ms. Grund and contained the handwritten notation "wait and return[.]" That notation is off to the side and is not labeled as a note or instruction to the transport driver. Ms. Grund testified at her deposition that, she did not make the handwritten notes, a secretary did. Ms. Kimmel did not use the phrase "wait and return" at all during her deposition.

{¶8} Upon arrival at Dr. Donich's office, the AMR transport driver handed the paperwork to Tia Cruise, the front desk receptionist, and then left the office. Ms. Cruise called Summa Rehab Hospital, LLC to inquire if a family member or nurse was coming to the appointment and explained that patients are not typically brought to appointments without accompaniment. She did not recall Summa Rehab Hospital, LLC's response.

{¶9} After being advised that Ms. Krznarich was unattended, in a wheelchair with an alarm, on a Foley catheter, and appearing confused, Jessica Herraiz, a nurse practitioner at Dr. Donich's office, also contacted Summa Rehab Hospital, LLC. Amber Lally, a registered nurse and as-needed supervisor at Summa Rehab Hospital, LLC took the call from Ms. Herraiz. Ms. Herraiz advised Ms. Lally that Ms. Krznarich's appointment had been previously cancelled. Ms. Herraiz also asked why no one was with Ms. Krznarich and indicated that she was confused. Ms. Herraiz informed Ms. Lally that Dr. Donich would see Ms. Krznaric but, in the future, someone needed to accompany her.

{¶10} According to Dr. Donich's deposition testimony, he became aware at some point during the appointment that Ms. Krznarich was unaccompanied. Dr. Donich stated that the failure of the AMR driver to remain with the patient was unusual and that medical transport drivers routinely stay during the entirety of the office visit, including while in the exam room. He advised that neurology visits do not typically have modesty concerns because they involve only the head and neck areas. Dr. Donich indicated that someone should have been present with her for the duration of her time at the office and that his practice did not have the staffing to provide that care.

{¶11} Following the exam, Ms. Krznarich was placed in the lobby to wait for the AMR driver. Ms. Cruise witnessed Ms. Krznarich attempt to stand from her wheelchair. Ms. Cruise went to the lobby to help Ms. Krznarich sit back down, then returned to her desk. Ms. Cruise witnessed Ms. Krznarich stand again, catch her right foot on her left foot, and fall to the ground. Ms. Cruise went to Ms. Krznarich's aid and remained with her until EMS arrived.

{¶12} Ms. Krznarich was transported to Akron City Hospital. Mr. Krznaric was not notified that Ms. Krznarich had an appointment, and, when he stopped to see her, he was notified that she had fallen at the appointment and was enroute to the hospital.

{¶13} Ms. Kimmel spoke with the AMR driver later that day and inquired as to his whereabouts during the appointment. Ms. Kimmel stated she was shocked to learn that he was outside of Dr. Donich's office smoking a cigarette. Ms. Kimmel was subsequently disciplined for failing to provide complete information to the driver about Ms. Krznarich's mental state and for failing to inform Ms. Lally that Ms. Krznarich had left the facility for her appointment. It is noted in the record of disciplinary action that Ms. Kimmel demonstrated "[i]nattention in administering patient care when such actions result in or could result in detrimental [e]ffects to the patient." This is further clarified by the testimony of Melissa Loftis, the chief nursing officer for Summa Rehab Hospital, LLC, who signed the record of disciplinary action. Ms. Loftis testified that Ms. Kimmel failed to mention to the driver that Ms. Kimmel had been Ms. Krznarich's sitter or that Ms. Krznarich needed closer observation.

{¶14} On October 3, 2018, Ms. Krznarich was transported to Bath Creek Estates. She died on October 15, 2018.

{¶15} In September 2019, Mr. Krznaric filed a complaint that was not expressly delineated into separate causes of actions. Nonetheless, Mr. Krznaric indicated that he was pursuing survivorship and wrongful death claims. The complaint included allegations of negligence, recklessness, and willful and wanton conduct related to the injury and death of Ms. Krznarich. Mr. Krznaric sought compensatory and punitive damages. An amended complaint was subsequently filed. Ultimately, Appellees Summa Rehab Hospital, LLC, Summa Health, Summa Health System Corp., Donich Neurosurgery and Spine, L.L.C., Dr. Donich, and Vibra SRH Holdings, LLC were named Defendants in the matter. Summa Rehab Hospital, LLC is co-owned by non-party Summa Health System and Defendant-Appellee Vibra SRH Holdings, LLC.

{¶16}  Extensive discovery was conducted.  Summa Rehab Hospital, LLC, Summa Health, and Summa Health System Corp. (collectively "Summa Defendants") filed a joint motion for summary judgment.  Dr. Donich and Donich Neurosurgery and Spine, L.L.C. filed a separate motion for summary judgment.  Vibra SRH Holdings, LLC also filed a motion for summary judgment and an amended motion.  In the amended motion, it stated that it was joining in the Summa Defendants' motion.  Mr. Krznaric opposed the motions.  Reply briefs were also submitted.

{¶17}  In April 2022, the trial court issued an entry granting summary judgment to all of the Defendants.  Mr. Krznaric has appealed, raising seven assignments of error for our review, some of which will be addressed out of order and consolidated to facilitate our discussion.

II.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED WHEN IT HELD THAT DR. CAROL A. WHITE IS PRECLUDED FROM OFFERING AN EXPERT OPINION AS TO THE STANDARD OF CARE OF MEDICAL TRANSPORT DRIVERS, AS THAT ISSUE WAS NEVER BEFORE THE TRIAL COURT ON ANY MOTION.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED WHEN IT HELD THAT SCOTT WILDENHEIM, THE SUMMA DEFENDANTS' EXPERT, IS QUALIFIED TO RULE AS TO THE STANDARD OF CARE OF MEDICAL TRANSPORT DRIVERS SINCE THAT ISSUE WAS NEVER BEFORE THE TRIAL COURT ON ANY MOTION.

### ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED WHEN IT HELD THAT DR. FELDMANN IS PRECLUDED FROM OFFERING EXPERT TESTIMONY AS TO THE STANDARD OF CARE OF MEDICAL TRANSPORT DRIVERS AS THAT ISSUE WAS NEVER BEFORE THE TRIAL COURT ON ANY MOTION.

{¶18}  In assignments of error four, five, and six, Mr. Krznaric argues that the trial court erred in concluding that both Dr. Carol White and Edward Feldmann, M.D., experts for Mr.

Krznaric, could not offer expert testimony as to the standard of care of medical transport drivers and that defense expert, Scott Wildenheim, was permitted to testify as to the standard of care of medical transport drivers. For reasons set forth below, we sustain these assignments of error.

{¶19} The trial court in its judgment entry indicated that the Summa Defendants and Vibra SRH Holdings, LLC argued that the Mr. Krznaric could not rely upon the opinions of Dr. White and Dr. Feldmann for all issues upon which they opined as they do not meet the requirements of former Evid.R. 702. Relevant to this appeal, the trial court then went on to conclude that Dr. White, a registered nurse and certified nurse practitioner who also has a Doctor of Nursing Practice degree, and Dr. Feldmann, a board-certified neurologist, could not offer an expert opinion as to the standard of care of medical transport drivers. While the Summa Defendants did briefly and sporadically discuss the issues related to the expert testimony of Dr. White and Dr. Feldmann, the Summa Defendants did not mention former Evid.R. 702 in their motion for summary judgment. Accordingly, they likewise did not expressly develop an argument based upon it. Moreover, while the Summa Defendants mentioned three of the defense experts in their motion for summary judgment, the trial court only examined the proposed testimony of Mr. Wildenheim, determining it admissible as to the standard of care medical transport drivers, even though it did not appear anyone was challenging that issue at that time or asking the trial court to make that ruling. This is concerning to the Court with respect to the issues of notice and due process. It is difficult to conclude that Mr. Krznaric should have responded to the argument explaining why said testimony was admissible under former Evid.R. 702 when that rule was not cited by the Summa Defendants or Vibra SRH Holdings, LLC and they did not develop an argument explaining how the rule was not satisfied.

{¶20} Former Evid.R. 702 states:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶21} It appears the trial court concluded that the opinions of Dr. White and Dr. Feldmann primarily failed to satisfy former Evid.R. 702(B). Although the trial court mentioned former Evid.R. 702(C) as well, the trial court only commented on Dr. White's and Dr. Feldmann's lack of experience arranging medical transport. *See* former Evid.R. 702(B). However, notably, former Evid.R. 702(B) is not limited to whether the witness has experience. Instead, it looks to whether the witness has "specialized knowledge, skill, experience, training, *or* education regarding the subject matter of the testimony[.]" (Emphasis in original.) Accordingly, if Dr. White and Dr. Feldmann had training or education concerning the topic, which was not fleshed out during their testimony, the testimony would satisfy former Evid.R. 702(B).

{¶22} Further, Dr. White and Dr. Feldmann were not asked about their experience arranging *ambulette* transport for a patient. Dr. Feldmann was asked when the last time he arranged ambulance service for a patient, and Dr. White was asked if she ever worked with

ambulance companies in arranging transport. Dr. Feldmann responded that he did not know when the last time was, and it could possibly be that he may not have ever done it. Dr. White indicated that she had done so in her responsibilities as a nurse and that the last time was probably in 2000. It is the foregoing testimony that the trial court concluded rendered the opinions of Dr. White and Dr. Feldmann not compliant with former Evid.R. 702 due to their lack of experience.

{¶23} The problem with this conclusion is that an ambulette is substantively different than an ambulance. *Compare* R.C. 4766.01(D) (defining ambulance) *with* R.C. 4766.01(E) (defining ambulette); *see also* R.C. 4765.01(E) (defining an ambulance as "any motor vehicle that is used, or is intended to be used, for the purpose of responding to emergency medical situations, transporting emergency patients, and administering emergency medical service to patients before, during, or after transportation."). An ambulance is:

> any motor vehicle that is specifically designed, constructed, or modified and equipped and is intended to be used to provide basic life support, intermediate life support, advanced life support, or mobile intensive care unit services and transportation upon the streets or highways of this state of persons who are seriously ill, injured, wounded, or otherwise incapacitated or helpless. "Ambulance" does not include air medical transportation or a vehicle designed and used solely for the transportation of nonstretcher-bound persons, whether the person is hospitalized or has a disability or whether the person is ambulatory or using a wheelchair.

R.C. 4766.01(D). While an ambulette is "a motor vehicle that is specifically designed, constructed, or modified and equipped and is intended to be used for transportation upon the streets or highways of this state of persons who require use of a wheelchair or other mobility aid." R.C. 4766.01(E). Further, the staffing requirements of an ambulette are not the same as those of an ambulance. *Compare* R.C. 4766.15 *with* R.C. 4765.43, 4765.44.

{¶24} Thus, the testimony relied upon by the trial court does not demonstrate whether Dr. White and Dr. Feldmann lacked experience arranging ambulette transport – the type of transport at issue in this matter.

**{¶25}** Moreover, while the trial court was correct that Mr. Wildenheim's expert report indicates he is the vice president of operations of a private ambulance and medical transport company, the expert report does not indicate his level of knowledge, skill, experience, training, or education with respect to ambulettes. The report states that Mr. Wildenheim oversees people who manage the wheelchair division, that he developed a wheelchair training program, and that he is familiar with the applicable standards and regulation of the industry. However, what encompasses that industry is not specified; in particular, it is not clear whether it includes ambulettes.

**{¶26}** Irrespective, what also is apparent from reviewing this section of the trial court's judgment entry is that the trial court, and to some extent the parties, was focused on a largely irrelevant standard of care. For better or worse, the ambulette driver and transport company are not parties to this action. Accordingly, whether the ambulette driver met the standard of care in performing his duties is not central to this action. The real issue before the trial court was whether the Defendants in this action met their applicable standard of care. Even if Mr. Wildenheim is qualified to testify as to the standard of care of an ambulette driver, we question whether he is qualified to opine as to the standard of a care of a nurse arranging transport, a nurse transferring a patient to an ambulette driver, the staff of a doctor's office who accepts a confused wheelchair-bound patient without accompaniment, or a doctor who is aware of the patient's condition and lack of accompaniment. On the other hand, it appears Dr. White and Dr. Feldmann would be aptly qualified to provide testimony as to different portions of the foregoing standards of care.

**{¶27}** Here, the trial court concluded, and it appears uncontested, that Summa Rehab Hospital, LLC had the duty to provide one-on-one care for Ms. Krznarich during her appointment to Dr. Donich's office. There was also testimony by Dr. Feldmann that Dr. Donich and his practice had a duty to provide similar care to Ms. Krznarich. In addition, there was evidence in the record

that both Summa Rehab Hospital, LLC and Dr. Donich and his practice were aware that Ms. Krznarich was at Dr. Donich's office without accompaniment, that she needed accompaniment, and neither resolved that problem.

{¶28} The totality of the foregoing circumstances causes this Court concern as to whether the trial court properly considered the evidence in relation to the actual issues before the trial court. This concern is further amplified by language in the trial court's judgment, which makes it clear to this Court that the trial court failed to view the evidence in a light most favorable to Ms. Krznarich as required by the summary judgment standard. *See Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977). We are also mindful that Mr. Krznaric had no burden until the Defendants satisfied their initial summary judgment burden. *See Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The trial court, throughout its opinion, repeatedly used the word finds, despite the fact that the trial court cannot weigh the evidence or determine issues of fact. *See Horner v. Elyria*, 9th Dist. Lorain No. 13CA010420, 2015-Ohio-47, ¶ 10. In addition, the trial court concluded that the form that stated "wait and return" was given to the ambulette driver by Ms. Kimmel, even though there is no confirmation in the record that the form in the record is the form that Ms. Kimmel provided to the driver. Further, despite the varied definitions of "wait and return" in the record, the trial court concluded that "wait and return" was equivalent to one-on-one supervision and, thus, providing the ambulette driver with the form met Summa Rehab Hospital, LLC's duty.

{¶29} Accordingly, we sustain Mr. Krznaric's fourth, fifth, and sixth assignments of error and remand the matter for the trial court to consider the evidence before it in relation to the underlying issues in the matter and in accordance with the summary judgment standard.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS: SUMMA REHAB HOSPITAL, LLC; SUMMA HEALTH AND SUMMA HEALTH SYSTEM CORP.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS DONICH NEUROSURGERY AND SPINE, LLC AND DANE DONICH, M.D.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT VIBRA SRH HOLDINGS, LLC.

## ASSIGNMENT OF ERROR VII

THERE IS NO BASIS TO GRANT THE MOTION FOR SUMMARY JUDGMENT FILED BY THE DEFENDANTS WITH RESPECT TO PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES.

{¶30} Given our resolution of Mr. Krznaric's fourth, fifth, and sixth assignments of error, we conclude that his remaining assignments of error are not properly before us at this time and will not be addressed.

### III.

{¶31} Mr. Krznaric's fourth, fifth, and sixth assignments of error are sustained. The remaining assignments of error are not properly before us at this time. The judgment of the Summit County Court of Common Pleas is reversed, and the matter is remanded for proceedings with this decision.

Judgment reversed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
<u>CONCURS.</u>

STEVENSON, J.
<u>DISSENTING.</u>

{¶32} I respectfully dissent from the majority's opinion as it is based on arguments that were not advanced by Mr. Krznaric and incorrectly opines that the Summa Defendants did not sufficiently raise the issue of Mr. Krznaric's experts' qualifications in their summary judgment motion.

{¶33} On appeal, Mr. Krznaric argued that the trial court's decision precluding his two experts, Dr. Carol White and Dr. Edward Feldmann, from offering an opinion should be overturned

because there was no motion to disqualify either expert before the trial court at the time it issued its ruling on Appellees' motions for summary judgment. Mr. Krznaric claims, therefore, that he did not have the opportunity to conduct discovery nor contest the scope of their qualifications. His "argument" on these three assignments of error was one paragraph in his merit brief that contained no citations to any case law, court rules, or statutes. Rather than address Mr. Krznaric's actual argument, or lack thereof, the majority fashions a new argument for him, that the Summa Defendants did not specifically invoke former Evid.R. 702 when they argued on summary judgment that Mr. Krznaric's experts had no specific knowledge or experience with arranging medical transport. Further, Mr. Krznaric makes no argument about the Summa Defendants' expert's qualifications, yet the majority questions this expert's qualifications as it relates to opinions regarding ambulette service.

{¶34} This Court has repeatedly said that "[a]n appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *King v. Divoky*, 2021-Ohio-1712, ¶ 13, quoting *State v. Watson*, 2009-Ohio-330, ¶ 5 (9th Dist.). "Moreover, it is not the duty of this Court to develop an argument in support of an assignment of error, even if one exists." *King* at ¶ 13, citing *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). Because Mr. Krznaric did not develop an argument in his merit brief, he did not meet his burden of demonstrating error on appeal, and this Court should overrule his assignments of error on these issues. Further, it was not this Court's duty to construct arguments on Mr. Krznaric's behalf as the majority has done.

{¶35} The docket reflects that Mr. Krznaric filed merit affidavits regarding both Feldmann (July 6, 2020) and White (October 21, 2020). The Summa Defendants addressed the issue of Feldman and White's qualifications in their motion for summary judgment, stating

specifically that neither Feldmann nor White were qualified to opine on the matter of medical transport professionals. Challenging an expert's qualifications automatically invokes former Evid.R. 702 because that is the rule that governs the qualifications of experts. Finding that a party was not alerted to former Evid.R. 702 arguments when its experts' credentials are questioned is the same as finding that a party was not aware that Evid.R. 801 is implicated if a party suggests its evidence is hearsay. I cannot join in reversing a decision because the trial court properly considered the rule that governs an expert's qualifications when deciding that issue, particularly when Mr. Krznaric does not make that argument himself.

{¶36} In his trial court brief in opposition, Mr. Krznaric made no attempt to oppose the Summa Defendants' arguments regarding his experts' lack of qualifications nor state how he would rebut the Summa Defendants' expert. He does not argue on appeal that he would have done so if only the Summa Defendants had invoked former Evid.R.702. Accordingly, I would conclude that Mr. Krznaric's claim that this issue was not before the trial court and that he was blind-sided by the trial court's decision is without merit. Mr. Krznaric simply chose not to address the experts' qualifications when he had the notice and opportunity to do so. I would also not find the trial court erred by considering an expert's qualifications under the relevant evidentiary rule.

{¶37} Lastly, the opinion states that Mr. Krznaric's first, second, third, and seventh assignments of error are not addressed because they are not properly before the court after his fourth, fifth, and sixth assignments of error are sustained. These assignments of error raise in part the propriety of the trial court's grant of summary judgment. Yet, the majority opinion specifically considers the merits of the trial court's granting summary judgment on issues like the standard of care and the trial court's consideration of evidence. In doing so, it again raises arguments that Mr. Krznaric does not make, such as a distinction between ambulance and ambulette service and the

fact that the trial court used the word "find," suggesting the trial court may have weighed evidence when doing so. If this Court is going to opine that it is not addressing the merits of the assignments or error involving the trial court's grant of summary judgment, it should not address the merits of the trial court's grant of summary judgment under its analysis of other assignments of error.

APPEARANCES:

BLAKE A. DICKSON and PAMELA DIMO, Attorneys at Law, for Appellant.

BRET C. PERRY and BRIAN F. LANGE, Attorneys at Law, for Appellees.

S. PETER VOUDOURIS, RAYMOND KRNCEVIC, and C. ASHLEY SAFERIGHT, Attorneys at Law, for Appellees.

JASON P. FERRANTE, Attorney at Law, for Appellee.